IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EVANGELINE TURNER** : | |
| : | |
| Plaintiff : | Case No. 1:07-cv-00569 JDB |
| : | |
| v. : | |
| : | |
| **FEDERAL EXPRESS CORPORATION** : | |
| : | |
| **Defendant** : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT**

**I.   BACKGROUND**

Plaintiff, Evangeline Turner (hereinafter "Plaintiff" and/or "Ms. Turner), has brought an action against Federal Express Corporation (hereinafter "Defendant" and/or "Federal Express" and/or "the Company") in the Superior Court for the District of Columbia alleging that she was defamed when she was accused of misconduct, specifically, not reporting that she had been in an accident while driving a Federal Express vehicle  She further claims that she was wrongfully discharged in violation of the contractual relationship she enjoyed with the Company.

Ms. Turner began her employment with the Defendant as a courier in 1997. On January 11, 2006, she was doing her assigned tasks and, in accordance with her usual practice, and her regular duties, parked the Company's vehicle in the docking station at the Environmental Protection Agency.  Ms. Turner began delivering her

packages to offices within the Environment Protection Agency and the Internal Revenue Service. The vehicle remained parked at the loading dock.

Sometime after January 11, 2006, Federal Express received a notice that one of its vehicles had been involved in an accident with a taxicab. Although Ms. Turner adamantly denied having been in such an accident, on January 20, 2006 she was suspended with pay while Federal Express investigated the situation.

It is unknown to whom Federal Express spoke specifically about Ms. Turner, or to whom it published any statements  Presumably, the Company communicated with various individuals in connection with its investigation. On February 3, 2006, Ms Turner was notified by the Company that she was terminated from her employment.

Subsequent to her termination, Ms. Turner did two things, to wit: she filed for unemployment compensation and she filed an appeal, utilizing the Company's Guaranteed Fair Treatment Procedure ("GFTP")

The GFTP entails a three-step process: (1) management review, (2) officer review, and (3) executive review. At each level of review, Federal Express is required to take certain actions to properly process an employee's complaint. Likewise, the employee is required to file appeals in a timely manner and according to specific guidelines. In compliance, with the Company's mandates, Ms. Turner filed for her management review on February 3, 2006.

While the appeal was being processed, Ms. Turner applied for unemployment compensation. At some point, subsequent to Ms. Turner's filing, the Defendant notified the District of Columbia Department of Employment Services ("DOES") that

it was contesting Ms. Turner's application for benefits on the basis that Ms. Turner had engaged in willful misconduct. Ms. Turner did not see the actual statement that Federal Express made but was, rather, advised on February 25, 2007 that Federal Express had contested her request for unemployment compensation.

On March 6, 2006, the DOES notified Ms. Turner that the evidence submitted by Federal Express did not substantiate its claim that Ms. Turner was involved in the accident. Ms. Turner was, therefore, eligible to collect unemployment benefits. Federal Express thereafter appealed the decision of the DOES and a hearing was scheduled. On the day of the hearing, Ms. Turner appeared but Defendant Federal Express did not appear and Ms. Turner gave unrebutted testimony. She ultimately prevailed and began receiving unemployment compensation.

On March 6, 2006 Defendant Federal Express notified Ms. Turner that she lost at the step 2 level of the GFTP. She was advised of her rights to appeal that decision and once again provided with specific instructions for the processing of her appeal, as set forth in the employee handbook. Ultimately, Ms. Turner was advised that her termination was upheld by the Appeals Board and her termination was final.

II.     **ARGUMENT**

    A..     **The Appropriate Standard of Review Applicable to Motions to Dismiss Pursuant to Fed.R.C.P. 12(b)(6) Mandates that Defendants' Motion be Denied**

The law is well settled that in considering a motion to dismiss a pleading under Fed.R.C.P 12(b)(6), all of the allegations contained in the complaint must be taken as true and construed in the light most favorable to the non-moving party.

*H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249-251, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

The district courts may grant a motion to dismiss for failure to state a claim upon which relief may be granted only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46. 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); "[A] plaintiff is not required to plead facts sufficient to prove its allegations, a federal court should not dismiss a complaint either for lack of subject matter jurisdiction or for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Caribbean Broadcasting System v. Cable & Wireless PLC*, 331 U.S.App.D.C. 226, 148 F.3d 1080 (D.C.Cir. 07/17/1998), citing *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983) quoting *Conley v. Gibson,* 355 U.S. at 45-46. After all, the issue presented by a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. at 236.

The purpose of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Cryer v. InterSolutions, Inc.*, No. 06-2032 (D.D.C. 04/20/2007) citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The factual allegations of the complaint are presumed to be true and are construed liberally in plaintiff's favor. See, e.g., *United States v. Phillip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2001). To decide a motion to

dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record  *Pension Benefits Guar. Corp. v. White Consol. Indus., Inc*. 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*. 510 U.S. 1042, 114 S.Ct. 687 (1994)

The Federal Rules of Civil Procedure require that if, on a motion to dismiss for failure to state a claim, the movants submit matters outside the pleadings which are not excluded by the court, the motion must be treated as one for summary judgment and disposed of in accordance with Rule 56.  *Walker v. Seldman*, No. 06-603 (D.D.C. 01/18/2007)

Defendant has attached to its motion various employment documents along with a Declaration of Lisa Monahan, allegedly to authenticate the documents and acknowledge Ms. Turner's receipt and understanding of the documents.  She cannot, of course, actually know that Ms. Turner signed the documents and what, if any, understanding of the documents she had.  Ms. Monahan's declaration automatically converts Defendant's motion to a Motion for Summary Judgment. *Mortensen v. First Federal Sav. & Loan Assoc.*, 549 F. 2d 884, 891 (3d Cir.

Once converted into a motion for summary judgment, the motion must be evaluated under the summary judgment standards and thus, the court must construe the facts and inferences in the light most favorable to the non-moving party, granting judgment only where the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. [I]n deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Further, "a genuine dispute is one where"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248."

### B. There are Material Facts in Issue Which Preclude Summary Judgment

The mandates of Fed.R.Civ.P. 56(c) are clear and well settled. If, after giving the nonmoving party the "benefit of all reasonable inferences," the record taken as a whole "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*. 475 U.S. 574, 587 (1986).

#### 1. Plaintiff's Claim is Timely

The first defamatory publication of Defendant Federal Express was made after the March 6, 2006 decision of the Department of Employment Services. While Ms. Turner's suspension was the beginning of her discipline, it was not until the Company made untrue statements to the DOES that her claim rose to the level of defamation and statements were made to a third party.

Plaintiff concedes that under ordinary circumstances, Defendant may enjoy an absolute privilege to make statements in connection with an unemployment compensation claim. The circumstances surrounding this particular matter, however, were far from ordinary.

In the face of overwhelming evidence to the contrary and with no evidence to support its own claim, Defendant Company appealed the decision of the DOES and

appealed its determination to award Ms. Turner unemployment benefits. When Defendant did not appear at the unemployment commission hearing, it admitted that it had made misrepresentations to the DOES.

On March 6, 2006, in connection with its GFTP, Federal Express notified Ms. Turner that she had lost her appeal at level 2 of the process. At the bottom of the letter, there was a list of eight (8) people that received copies of the letter that stated that Ms. Turner had did not have the requisite "high degree of personal integrity and responsibility of its employees." This statement was the only statement that Ms. Turner saw with respect to her termination and well within the one year statute of limitations for defamation.

### 2. Defendant's Statements were not Privileged.

On March 6, 2006, the DOES found that Defendant had submitted no evidence to support its position that Ms. Turner had not reported an accident in which she had been involved. DOES attached a witness affidavit submitted by Ms. Turner indicating that she had not moved her truck during the day of January 11, 2006, the day in which she was supposed to have been involved in an accident.

Notwithstanding the evidence submitted by Ms. Turner, Defendant Federal Express submitted an appeal form asserting that Ms. Turner had been in an accident on the day and time that her truck was securely parked in a loading dock. Defendant's insistence that Ms. Turner engaged in misconduct cannot be privileged since it was quite clearly based on Defendant's misrepresentation and malice.

Assuming *arguendo* that the Defendant's initial contest to Ms. Turner's application for unemployment compensation was absolutely privileged, Defendant's subsequent statements, published to DOES, were excessive and malicious.

This Court has, on many occasions addressed the issue of absolute privilege in the context of employment matters. In *Wallace v. Skadden, Arps, Meagher & Flom*, 715 A.2d 873 (D.C. 1998) the Court stated:

> [W]e do not agree with the contention that an employer's statements regarding the privilege or conduct of an employee are absolutely privileged." 715 A.2d at 879. Although employers enjoy a long-recognized privilege from defamation in employee evaluations, "[t]he privilege in question . . . exists only in the absence of malice; it is a qualified privilege." Id. (internal citations, quotations omitted). A qualified privilege may be lost for reasons of excessive publication as well as malice. "[T]he basis, if any, for excusing dissemination of a defamatory report within a faculty . . . or within an employment group . . . is . . . the existence of a qualified privilege — a privilege which can be lost if the publication occurs outside normal channels, is otherwise excessive, or was made with malicious intent." *See District of Columbia v. Thompson*, 570 A.2d 277, 292 (D.C. 1990), vacated in part on other grounds, 593 A.2d 621 (D.C. 1991).

While these cases do not address statements submitted to the DOES, they do nevertheless confer obligations upon an employer to confine its statements to the facts and not overreach when evaluating, disciplining or in any way commenting on conduct of its employees. To permit employers unfettered latitude to make statements about employees under the guise of an absolute privilege in a quasi-judicial proceeding, would be illogical.

This Court in Tacka v. Georgetown University, , 193 F.Supp.2d 43 (D.D.C. 11/30/2001), stated:

*Wallace* not only distinguishes the *Farrington* [*Farrington v. Bureau of Nat'l Affairs, Inc.*, 596 A.2d 58 (D.C. 1991)] line of cases on the basis of whether an employee has consented to the evaluation in contract or through an affirmative act of consent, but also questions whether the "absolute" privilege found in *Farrington* should apply at all in cases where the alleged defamation goes far beyond criticism of an employee's work performance and a substantial question exists as to malice or excessive publication. In this case, where a serious charge was made against the plaintiff, and where he has raised significant questions as to the Defendant's motivation and the scope of publication, and where his consent, even though based in contract, is merely implicit, the University's privilege to publish defamatory statements is merely qualified, in accordance with *Wallace*. See 715 A.2d at 879.*fn8

The *Tacka* Court went on: "The Defendant is not entitled to summary judgment on the basis of this qualified privilege. A qualified privilege is lost through publication that is outside normal channels, or otherwise excessive, or that is made with malicious intent. *See* 715 A.2d at 880, quoting *Thompson* at 292 [*District of Columbia v. Thompson*, 570 A.2d 277, 292 (D.C. 1990), vacated in part on other grounds, 593 A.2d 621 (D.C. 1991)].

### 3. Plaintiff and Defendant were Mutually Bound by the Dictates of the Employee Handbook

Defendant's position that Ms. Turner could be terminated because she was an employee-at-will does not address the mutual obligations and procedures set forth within its Employee Handbook.

The Court of Appeals in *McConnell v. Howard University*, 818 F.2d 58 (DC Cir. 5/5/87) stated that [i]t is well established that, under District of Columbia law, an employee handbook such as the Howard University Faculty Handbook defines the rights and obligations of the employee and the employer, and is a contract

enforceable by the courts. See *Greene v. Howard Univ.*, 134 U.S. App. D.C. 81, 412 F.2d 1128, 1132 (D.C. Cir. 1969); *Howard Univ. v. Best*, 484 A.2d 958, 970 (D.C. 1984).

Defendant Federal Express declares that since Ms. Turner signed a receipt and understanding of the employee handbook, she has acknowledged that the handbook is not an enforceable contract. However, the circumstances of Ms. Turner's signing of this acknowledgment is not described. Very often in an employment situation, an employee is given many documents to sign, including tax information, contact information, etc. Very often, there is no time given to the employee to read such documentation.

The handbook submitted as an Exhibit to Defendant's Motion to Dismiss is ninety-six (96) pages of small print. The disclaimer that the handbook is not a contract of employment appears on page 2 and only page 2 of the document. The remaining 94 pages set forth the mutual obligations of the parties and, in particular, set forth the Guaranteed Fair Treatment Procedure (Handbook at pp. 2,3, 19, 43, 48, 84, 85-87, 90).

Plaintiff contends that the handbook does constitute an enforceable contract but also asserts that Defendant violated its own procedures within the handbook when it violated the GFTP. When provided with overwhelming evidence that Ms. Turner could not have been at the location of the accident, and after there was such a finding by the DOES, it terminated Ms. Turner from her employment.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this court deny Defendants' Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted,

April 23, 2007

_____
Michael L. Avery (Bar # 447083)
AVERY & ASSOCIATES
1331 H Street, NW, Suite 902
Washington, DC 20005
202-393-4600
Facsimile 202-393-3633

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EVANGELINE TURNER** | : | |
| | : | |
| Plaintiff | : | Case No. 1:07-cv-00569 JDB |
| | : | |
| v. | : | |
| | : | |
| **FEDERAL EXPRESS CORPORATION** | : | |
| | : | |
| Defendant | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss was served via first class mail, postage prepaid this 23rd day of April, 2007 on the following:

M. Kimberly Hodges
Federal Express Corporation
3620 Hacks Cross Road
Building B – 3rd floor
Memphis TN 38125

_____

Michael L. Avery